IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VISION BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-0442-CG-M |
| | ) |
| ALAN J. SWINDALL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on plaintiff's motion for partial summary judgment (Doc. 39), defendant's opposition thereto (Doc. 43), and plaintiff's reply (Doc. 45). Plaintiff seeks summary judgment in its favor as to Count One of its complaint and as to all of defendant's counterclaims. For reasons that will be explained below, the court finds that plaintiff's motion is due to be granted.

## FACTS

Plaintiff, Vision Bank, filed this case alleging that defendant, Alan J. Swindall, was indebted to plaintiff on a loan for the principal amount of $4,550,000.00. (Doc. 1). Vision Bank alleges that defendant is in default. The complaint asserts two counts, the first seeks judgment for all sums owed under the note and the second seeks an accounting and inspection. Defendant asserts counterclaims for (1) breach of contract because plaintiff "fail[ed] or refus[ed] to renew the Notes at prime plus 1%," (2) breach of contract for failing, "first and before any other remedy, either explicitly or by implication, to foreclose upon [the collateral property] and offset

1

the monies received against the note(s)," (3) promissory fraud regarding plaintiff's promise "that the interest rate on this loan would at all times be prime plus 1%," (4) conspiracy "to obtain Swindall's credit to take all of the risk on an extremely shaky and doomed condominium development called Oyster Bay Condominium and did in fact secure said financing to the extent that only Swindall will suffer any loss…" and (5) specific performance seeking foreclosure before any other remedy. (Doc. 7). Plaintiff seeks summary judgment in its favor as to Count One of its complaint and as to all of defendant's counterclaims.

On June 23, 2005, defendant executed a Promissory Note in favor of Vision Bank in the principal amount of $4,550,000.00 with a maturity date of January 1, 2006. (Doc. 40-1). The Note stated that the interest rate was "7.000% per year until first rate change" and that the "future rate" will be Wall Street Prime plus 1%. The Note stated that the purpose of the loan is to "purchase 10+/- acres of commercial property" and that the Note was secured by the real estate mortgage. On May 1, 2006, defendant executed a replacement Note for the $4,550,000.00 previously loaned at a new interest rate of Wall Street Prime plus 2% and with the extended maturity date of July 1, 2009. (Doc. 40-3). Defendant testified that he knew when he executed the replacement note that the interest rate was going up by 1 percent. (Doc. 40-2 pp. 12-13). Defendant executed a modification effective December 24, 2008, which changed the maturity date to March 1, 2009, and set the interest at a fixed rate of 6.5% per annum. (Doc. 43-10).

The Notes provide that defendant is in default if, among other things, he fails "to make a payment on time or in the amount due" or if he fails "to pay, or keep any promise on any debt or agreement [defendant has with [Vision Bank]." (Docs. 40-1, 40-3, at p. 3). The Notes further provide that if defendant is in default, Vision Bank may use any remedy it has under state or

2

federal law. (Docs. 40-1, 40-3, at p. 3). The Notes state that "[t]he law of the state of Alabama will govern this agreement." Docs. 40-1, 40-3, at p. 3).

Defendant reportedly failed to make scheduled payments under the Notes. (Doc. 40-5). Defendant testified that "if the economy hadn't turned bad and this underlying transaction worked as it was supposed to, [he] would have paid on the note." (Doc. 40-2, p. 10). As of April 20, 2010, the balance owed under the Notes was $4,208,469.78, consisting of $4,163,955.67 in principal, $44,314.11 in accrued and unpaid interest, and $200.00 in late charges. Interest continues to accrue on the Notes at a rate of 6.5% per annum. The Notes also provide for the recovery of attorney's fees and collection costs incurred if defendant defaults. (Docs. 40-1, 40-3, at p. 3).

Defendant avers that Vision Bank told him at the time he executed the original Note on June 23, 2005, that the interest rate throughout the entire term of the loan would be Wall Street Prime plus 1%. (Doc. 43-12). Defendant testified that what made him believe that Vision Bank conspired against him is that Andy Shaddix, a former employee of Vision Bank, got a pre-construction contract for a condo in the development project on the collateral property for the loan at issue in this case. (Doc. 44-1, p. 2). As far as defendant knows, Vision Bank did not play any role in causing the development project to fail. (Doc. 44-1, p. 4). Vision Bank appraised the collateral property and estimated that as of March 6, 2009, the value of the collateral was $3,210,000.00. (Docs. 43-11, 43-12).

# DISCUSSION

## A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda

v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)). Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Plaintiff's Claims**

Vision Bank seeks summary judgment as to Count One of its complaint which alleges that defendant has defaulted on the Notes and seeks judgment for all sums owed under the note. A plaintiff can establish a claim for breach of contract by showing "(1) the existence of a valid

5

contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 303 (Ala. 1999)(citing S. Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995)(citations omitted)).  There is no dispute that the parties entered into the Notes described above.  There also appears to be no dispute that Vision Bank loaned defendant the $4,550,000.00 stated in the agreements and that defendant has failed to pay as required by the agreements.  However, defendant claims that Vision Bank did not fully perform under the contracts because the original Note stated that the future interest rate will be Wall Street Prime plus 1% and Vision Bank failed to uphold that bargain.

According to defendant, Vision Bank told him at the time he executed the original Note that the interest rate throughout the entire term of the loan would be Wall Street Prime plus 1%.  However, the maturity date of the original agreement was January 1, 2006.  The interest rate did not increase above Wall Street Prime plus 1% throughout the term of the original loan.  Had plaintiff paid off the note on January 1, 2006, as contemplated by the agreement, there would have been no increase in the interest rate.  Moreover, when the parties entered into the second written agreement, the terms of the second agreement became controlling.  "Parties may modify the terms of their agreement and 'if the terms of a subsequent agreement contradict the earlier agreement, the terms of the later agreement prevail.'" McLemore v. Hyundai Motor Mfg. Alabama, LLC, 7 So.3d 318, 332-333 (Ala. 2008) (quoting Cavalier Mfg., Inc. v. Clarke, 862 So.2d 634, 641 (Ala. 2003)).  Thus, the parties' agreement to increase the interest rate and extend the maturity date prevails over any contrary prior agreement between the parties.

To the extent defendant contends that the parties had an oral agreement at the time the replacement note was executed that the interest rate would remain the same,[1] the evidence does not support that contention. Defendant admits that he knew when he executed the second note that the interest rate was going up by one percent. Moreover, generally "if a written contract exists, the rights of the parties are controlled by that contract; and parol evidence is not admissible to contradict, vary, add to, or subtract from its terms." Tyler v. Equitable Life Assur. Soc. of U.S., 512 So.2d 55, 57 (Ala. 1987) (citing Alabama Farm Bureau Mutual Casualty Insurance Co. v. Adams, 289 Ala. 304, 267 So.2d 151 (1972)). Extrinsic evidence may be allowed to show fraud, mistake or ambiguity. However, there has been no contention that the replacement Note is ambiguous and, as stated above, defendant admits that he knew when he executed the second agreement that it would raise the interest rate. Thus, the court finds that the terms of the second note were binding on the parties.

The uncontroverted evidence shows that the parties entered into a series of valid contracts, that Vision Bank fully performed under the contracts, that the defendant failed to perform under the contracts, and that Vision Bank suffered damages as a result. Therefore, summary judgment is due to be granted in favor of Vision Bank on its breach of contract claim.

**C. Defendant's Counterclaims**

Defendant asserts counterclaims for (1) breach of contract because Vision Bank "fail[ed] or refus[ed] to renew the Notes at prime plus 1%," (2) breach of contract for failing, "first and before

---

[1] In response to plaintiff's assertion that under ALA CODE § 8-9-2 an agreement to lend money must be in writing, defendant argues that "there was no oral agreement as to interest." (Doc. 43-2, p. 3). While defendant's argument is directed in defense of summary judgment with regard to one of his counterclaims against Vision Bank, the concession is also relevant to his defense of Vision Bank's breach of contract claim.

any other remedy, either explicitly or by implication, to foreclose upon [the collateral property] and offset the monies received against the note(s)," (3) promissory fraud regarding plaintiff's promise "that the interest rate on this loan would at all times be prime plus 1%," (4) conspiracy "to obtain Swindall's credit to take all of the risk on an extremely shaky and doomed condominium development called Oyster Bay Condominium and did in fact secure said financing to the extent that only Swindall will suffer any loss…," and (5) specific performance seeking foreclosure before any other remedy. The court will discuss each in turn below.

**1. Breach of Contract (increase in interest rate)**

Defendant asserts that Vision Bank breached an agreement when it failed or refused to renew the Notes at prime plus 1%. Defendant concedes that "[t]here was no oral agreement as to interest." (Doc. 43-2, p. 3). The court finds that defendant's breach of contract counterclaim fails because, as discussed above with regard to Vision Bank's breach of contract claim, Vision Bank fully performed under the contracts. Although the original Note stated that the future rate would be prime plus 1%, that agreement required defendant to repay the money on January 1, 2006, at which time the contract would be complete. The only "future" contemplated by the original Note was through January 1, 2006. Defendant failed to perform under the original Note, and the parties entered into a second agreement which modified the interest rate and the maturity date. Upon execution of the replacement Note, the terms of the replacement Note became controlling. McLemore, 7 So.3d at 332-333 (citation omitted). As such, the court finds that Vision Bank did not breach any agreement between the parties by increasing the interest rate in the replacement Note.

8

**2. Breach of Contract (choice of remedy)**

Defendant's second breach of contract claim asserts that Vision Bank breached the contract by failing, "first and before any other remedy … to foreclose upon [the collateral property] and offset the monies received against the note(s)." Defendant asserts that because Alabama is a title theory state, meaning that mortgaging property actually works a conveyance of legal title to the lender, the value of the land should be set off against the loan and the interest rate calculated upon the balance. However, as plaintiff points out in its reply, the mere fact that Alabama is a title state does not require a lender to exercise its right to title.

> The mortgagee may pursue any course he pleases to collect the debt, whether it be a suit for a personal judgment against the debtor, or for damages against one who has wrongfully converted the mortgaged property, or otherwise destroyed his rights in it, or for a foreclosure. And he may do them all at the same time. But when he once collects his debt, by any one of those proceedings, or by a voluntary payment of it, he cannot pursue any other remedy. They are all but means to accomplish one purpose, and when that is accomplished, all the remedies, not used in so doing, are terminated.

Sloss-Sheffield Steel & Iron Co. v. Wilkes, 165 So. 764, 767 (Ala. 1936). "'The Supreme Court of Alabama has held that the mortgagor continues to be the real owner of property, subject to a mortgage, and that in equity, until foreclosure, the property is 'merely security for a debt', and 'title to the property is in the mortgagee only as security' [.]" Baldwin County Sav. & Loan Ass'n v. U.S., 1981 WL 1851, *3 (S.D.Ala. May 18, 1981) (citing Jones v. Butler, 237 So. 2d 460 (1970)); see also Denton v. Lindler, 163 So. 334, 334 -335 (Ala. 1935) ("The theory of mortgages in Alabama is that, at law, they pass the legal title, sufficient to sustain ejectment. But in equity, until foreclosure, they are merely security for a debt; the mortgagor continuing the real owner of the land." citations omitted); Jefferson County v. Smith, 125 So. 401, 423 (Ala.App. 1930) ("The Supreme Court in Garrison, Judge of Probate, v. Hamlin, 215 Ala. 39, 109 So. 106, [(Ala. 1926)] affirmatively held

that recordation of an assignment of a chattel mortgage was not subject to the 'deed-tax,' the court in that case reasoning that the interest conveyed by the assignment and transfer was a mere conditional interest in the property covered by the mortgage; that that interest was subject to divesture by the payment of the mortgage debt; that that interest was merely security for a debt, coupled with the right under the instrument to charge the property with the payment of the debt; and that the transfer or assignment of such a conditional interest was not a conveyance of property within the contemplation of the Deed-Tax Act.").

Although Vision Bank had legal title to the mortgaged property, it has not foreclosed upon the property and has no right to possession of the property. Vision Bank only holds title to the property as security for the loan to defendant and may choose to foreclose upon the property or seek judgment against defendant. The Notes expressly state that Vision Bank may use any remedy it has under state or federal law. Vision Bank has fully performed under the contract, and its decision to seek money damages instead of foreclosing is within its rights under the terms of the contracts at issue and under the laws of Alabama. Therefore, the court finds that Vision Bank did not breach any agreement with defendant by seeking money damages against defendant instead of foreclosing on the property.

### 3. Promissory Fraud

Defendant's claim for promissory fraud is based on Vision Bank's promise that the interest rate on the loan would at all times be prime plus 1%. Promissory-fraud is an intentional species of fraud, requiring proof of an intent to deceive. Byrd v. Lamar, 846 So.2d 334 (Ala. 2002); see Ex parte Michelin North America, Inc., 795 So.2d 674, 678 (Ala. 2001); Ex parte City of Gadsden, 718 So.2d 716, 720 (Ala. 1998). "A claim of promissory fraud is 'one based upon a promise to act or

10

not to act in the future.'" Michelin, 795 So.2d at 678 (quoting Padgett v. Hughes, 535 So.2d 140, 142 (Ala. 1988)).

> The elements of fraud are: (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim ..., two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive.

Michelin, 795 So.2d 674, at 678-679 ( quoting Padgett v. Hughes, 535 So.2d 140, 142 (Ala. 1988)). In the instant case, the court finds that defendant has not presented evidence tending to show all of the above elements.

Defendant has conceded that there was no oral agreement as to interest and, as discussed above, the court finds that Vision Bank has fully complied with the terms of the written agreements with regard to the interest rate. The original Note merely stated that the interest rate would be Wall Street Prime plus 1% for the future of that agreement, which matured on January 1, 2006. The interest rate was not changed until after that date. Thus, there was no false representation. Even if Vision Bank had promised the defendant that the rate would not ever change throughout the life of the loan and beyond the maturity date of the original Note, there is no evidence that Vision Bank intended not to perform at the time such promise was made, or that it intended to deceive defendant. As previously discussed, under the original Note the defendant was to pay off the loan on January 1, 2006, and the relationship between the parties would have then come to an end. If everything had gone as planned and intended, Vision Bank would have been paid for the loan and the interest rate would not have changed. The uncontroverted evidence is that the parties later agreed to change the interest rate by entering into a new Note, which defendant executed with the knowledge that the

interest rate would increase. Defendant could not reasonably have relied on the alleged promise when he executed the replacement Note.

Defendant asserts in his brief that Vision Bank concealed facts from the defendant.[2] However, defendant did not assert a claim for suppression as a counterclaim. Moreover, the uncontroverted evidence shows that defendant knew when he executed the replacement note that the interest rate was increasing by one percent. To the extent defendant contends that the facts were suppressed at the time he entered into the original loan, there is no evidence that Vision Bank at that time planned to raise the interest rate if a replacement Note was later executed. The fact that Vision Bank intended to raise the interest rate could not have been suppressed if Vision had no such intention at that time. Thus, the court finds that summary judgment should be granted in favor of Vision Bank as to defendant's counterclaim for fraud.

**4. Conspiracy**

Defendant claims that Vision Bank conspired to have defendant assume all of the risk on an "extremely shaky and doomed" condominium development and caused him to suffer a loss.

> "'Alabama recognizes [civil conspiracy] as a substantive tort.' Purcell Co. v. Spriggs Enters., Inc., 431 So.2d 515, 522 (Ala. 1983). 'In essence, civil conspiracy is a combination of two or more persons to do: (a) something that is unlawful; [or] (b) something that is lawful by unlawful means.' Id. See also Eidson v. Olin Corp., 527 So.2d 1283, 1285 (Ala. 1988). 'In a conspiracy, the acts of coconspirators are attributable to each other.' Williams v. Aetna Fin. Co., 83 Ohio St.3d 464, 476, 700 N.E.2d 859, 868 (1998)."

DGB, LLC v. Hinds, --- So.2d ---, 2010 WL 2629411, 14 (Ala. June 30, 2010) (quoting Ex parte Reindel, 963 So.2d 614, 621 n. 11 (Ala. 2007)). "A plaintiff alleging a conspiracy must have a

---

[2] Defendant argues that Vision Bank "had a duty to disclose to Swindall that the interest rate promised on the June 23, 2005 note was not going to be on the supposed January 1, 2006 note, but would be increased in all notes" and that Vision Bank "concealed those facts from Swindall" and induced Swindall to act. (Doc. 43-2, p. 4).

valid underlying cause of action." Id. (quoting <u>Callens v. Jefferson County Nursing Home</u>, 769 So.2d 273, 280 (Ala. 2000)). "'[A] conspiracy claim must fail if the underlying act itself would not support an action.' Id. (quoting <u>Callens</u> <u>supra</u>).

It is unclear what underlying cause of action defendant claims supports his conspiracy claim. Defendant testified that what made him believe that Vision Bank conspired against him is that Andy Shaddix, a former employee of Vision Bank, got a pre-construction contract for a condo in the development project on the collateral property for the loan at issue in this case. However, defendant has not shown that Shaddix' obtaining a pre-construction loan supports an underlying claim. The court has found herein that all of defendant's other counterclaims fail, and notes that there is no evidence that Vision Bank played any role in causing the development project to fail or that it had any knowledge of the alleged "doomed" nature of the project. There is also no evidence that Vision Bank suppressed any facts regarding the risk involved with the development project. Because defendant has asserted no viable underlying claim that could support his conspiracy claim, the court finds that defendant's conspiracy claim also fails.

### 5. Specific Performance

As in defendant's second counterclaim for breach of contract, defendant asserts that Vision Bank must seek foreclosure before any other remedy. The court finds that defendant's claim for specific performance fails for the same reasons stated above with regard to defendant's breach of contract claim. Vision Bank's action seeking money damages rather than foreclosure is within its rights under the terms of the contracts at issue and under the laws of Alabama.

## **CONCLUSION**

For the reasons stated above, the court finds that summary judgment should be entered in favor of Vision Bank and against Alan J. Swindall as to Count One of plaintiff's complaint and as to all of defendant's counterclaims.  Accordingly, plaintiff's motion for partial summary judgment (Doc. 39) is **GRANTED**.

**DONE and ORDERED** this 4th day of August, 2010.

                                           /s/   Callie V. S. Granade
                                      UNITED STATES DISTRICT JUDGE